

**DORSEY**

BRUCE R. EWING
Partner
(212) 415-9206
FAX (212) 953-7201
ewing.bruce@dorsey.com

JANUARY 28, 2008

**BY HAND**
The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2210
New York, New York 10007-1312

    Re:    <u>Toy Play LLC v. Geometix Int'l, LLC</u>, Index No. 07-CV-11226 (WHP)

Dear Judge Pauley:

    We are counsel to Toy Play, LLC, the plaintiff in the above-referenced action. We write pursuant to Paragraph 3(A) of the Court's Individual Practices to request a pre-motion conference in advance of filing a motion to dismiss the counterclaims filed on January 17, 2008 by defendant Geometix International, LLC.

    As the pleadings to date make clear, there is one core question that the Court should resolve before considering any other issues in this action, and that is whether the parties ever became bound to an agreement in April 2004. Plaintiff contends that the agreement the parties discussed up to and during that month never became legally effective, and if this assertion is correct, there can be no reasonable dispute that defendant's counterclaims, all of which are premised on that alleged agreement, fail as a matter of law, and that plaintiff is likewise entitled to the declaratory relief it seeks. Thus, the issue of contract validity should take precedence over all others raised by the parties' pleadings.

    Plaintiff respectfully submits that the parties' pleadings and the documentary evidence attached to them establish as a matter of law that the parties never reached an enforceable agreement, either in April 2004 or at any point thereafter. The defendant claims that such an agreement was reached at that time but also concedes that the parties had no further communications with each other after that month until November 2007, when defendant suddenly alleged that there was a contract between the parties that had been breached more than three years previously. This long period of silence on defendant's part, at a time when a contract was supposedly in place, and which is admitted in defendant's Answer, is compelling evidence that the parties understood they had never entered into a contract. <u>See</u> Complaint, ¶ 14; Answer, ¶ 14.

    The documentary evidence attached to the parties' pleadings likewise confirms that the contract upon which defendant's counterclaims are founded never came into existence. Paragraph 8(a) of the proposed agreement required that the parties were to obtain and maintain liability insurance covering both the patent that defendant sought to license to plaintiff and any products that would be manufactured thereafter. As shown in Exhibit B to plaintiff's December

**DORSEY**

The Honorable William H. Pauley III
January 28, 2008
Page 2

13, 2007 Complaint and the last page of the emails attached as Exhibit B to defendant's January 17, 2008 Answer and Counterclaims, not only was such insurance never obtained by defendant, but defendant advised plaintiff on April 5, 2004, before signing the proposed agreement, that it would not do so.  Thereafter, on April 12, 2004, defendant expressly advised plaintiff that it had not and would not obtain the required policy of insurance pursuant to the proposed agreement and made clear that no deal was yet in place:

> I suggest if the cost of this insurance is greater than $5K (which I expect it to be), then I need to have you pay for it (as additional advance monies against royalties if you like).  If we can move ahead with that understanding, great and let's close this week.  If we delay another week, we'll have to re-negotiate the advance.

Answer and Counterclaims, Exh. B, April 12, 2004 email.

If, as defendant contends, the proposed agreement took effect on April 5, 2004, there would have been no need for discussions on April 12, 2004 about closing "next week" or re-negotiating the terms of an agreement that was supposedly already in place.  The correspondence that is already of record therefore demonstrates as a matter of law that no agreement was ever entered into by the parties.  Moreover, if there was an agreement between the parties between April 2004 and December 31, 2006, as defendant contends, how is it possible that there could have been no communication between the parties after April 2004?  The answer is obvious:  both parties understood that there was no contract in place between them, because, as the correspondence of record demonstrates, no agreement was ever reached.

In its Answer and Counterclaims, defendant has referenced an arbitration clause in the parties' proposed agreement, but that clause does not prevent the Court from determining whether the agreement discussed in April 2004 ever took effect.  Both federal and New York law are clear that it is the Court's role to determine both whether a dispute is arbitrable, see <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 943-45 (1995); <u>Abram Landau Real Estate v. Bevona</u>, 123 F.3d 69, 72 (2d Cir. 1997), and particularly whether an agreement to arbitrate ever became legally effective.  See <u>Bangor Punta Operations, Inc. v. Carnaby Knitting Corp.</u>, 37 A.D.2d 513, 514, 321 N.Y.S.2d 806, 807-08 (1st Dep't 1971).

**DORSEY**

The Honorable William H. Pauley III
January 28, 2008
Page 3

      Based upon the foregoing, plaintiff respectfully requests that it be permitted to serve and file a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's counterclaims. See Subaru Distributors Corp. v. Subaru of America, Inc., No. 03 Civ. 9608 (SCR), 2004 WL 3220120 (S.D.N.Y. June 1, 2004) (granting motion to dismiss breach of contract claims where such claims were deficient as a matter of law), aff'd, 425 F.3d 119 (2d Cir. 2005).[1] Plaintiff's deadline to file such a motion is February 6, 2008, and plaintiff also respectfully requests that the deadline for it to so move or otherwise respond to defendant's Counterclaims be extended to a date ten (10) days after the issuance of an order granting permission for the filing of the proposed motion to dismiss.

      The Court has previously scheduled a conference with counsel for the parties on March 14, 2008 at 12:00 noon. Plaintiff would not object should the Court wish either to move up that conference on account of this request, or defer this request until the previously scheduled conference.

      We are available at the Court's convenience should Your Honor wish to discuss these matters further.

Respectfully Submitted,

Bruce R. Ewing

cc:    Robert Previto, Esq. (by Electronic and U.S. Mail)

*Application Granted. This Court will hold an initial pre-trial conference and a pre-motion conference on February 29, 2008 at 9:30 a.m.*

SO ORDERED:

WILLIAM H. PAULEY III U.S.D.J.
2/5/08

---

[1] Apart from the issue of contract validity, several of defendant's counterclaims are deficient for other reasons. For example, defendant's second counterclaim seeks to recover $3 million allegedly owed as a consequence of plaintiff's failure to purchase certain goods from a manufacturer that is not a party to this action, meaning that defendant has no standing to recover these amounts. Defendant's fourth counterclaim seeks to recover $500,000 in damages allegedly incurred as a consequence of violations of paragraph 7.2 of the purported contract, but this claim is contradicted by the unambiguous terms of that provision. These patently meritless counterclaims highlight the transparent manner in which defendant, so many years after its claims of breach allegedly arose, is now trying to extract a windfall to which it has no legal entitlement.